## Hall, et al. v. Hall, et al.

(Decided October 26, 1917.)

### Appeal from Letcher Circuit Court.

1. Religious Societies—Controversy as to Faith or Doctrine—Jurisdiction.—Where a controversy or division growing out of differences in faith or doctrine occurs between the members of a church, the civil courts are without jurisdiction to determine which of the two factions has departed from the system of faith or doctrine held and taught by the religious sect to which such church belongs.

2. Religious Societies—Jurisdiction of Courts to Determine Right of Property.—With respect to church property of an independent, self-governing congregation (such as the Baptist church), which is controlled by a majority of its membership, in cases of controversy, following a division and complete separation of one part of the congregation from the other, the civil court, if there be no specific trust involved, will, as a general rule, give the property to the majority of the membership without inquiry as to whether there has been any change in the religious views of the majority of the congregation.

3. Religious Societies—Rights of Property—Pleading.—In an action brought by certain members of a church of the "Regular Primitive Baptist Faith," to recover the church lot and house of worship thereon, from other members admitted to be in the possession thereof, a recovery will not be allowed merely upon the ground of an alleged departure on the part of the latter from the ancient or true faith and doctrine of the church in the absence of a showing: (1) That the plaintiffs constitute a majority of its membership. (2) That the defendants are illegally in possession of the property. (3) That they have been deprived of the right to continue as members of the church and in control of the church organization and property, by proper action had upon the part of the church membership, concurred in by a

majority thereof. As the allegations of the petition in this case fail to manifest the state of facts mentioned as essential to a right of recovery in the plaintiffs, it did not state a cause of action, hence the ruling of the circuit court in sustaining a general demurrer to the petition was not error.

4. Religious Societies—Government of Baptist Church—Trustees.— Under the form of government and rules of the Baptist church only the congregation of such church, acting through a majority thereof, has the power to appoint trustees for the church.

FIELDS & DAY, D. D. FIELDS and JOE HALL for appellants.

FRENCH HAWK, WILLIAM G. DEARING and ROBERT BLAIR for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

This appeal brings to us for review a judgment of the Letcher circuit court, which sustained a general demurrer filed by appellees to appellants' petition, as amended, and dismissed the action. The action was brought to recover a lot and building thereon situated near the mouth of Sandlick creek on the north fork of Kentucky river, in Letcher county, Kentucky, known as the "Sandlick Church," the membership of which is a religious organization or sect of the "Old Regular Primitive Baptist Faith"; and also to recover certain church records claimed to be illegally held by the appellees. The plaintiffs in the action were the appellants, Joe Hall, M. G. Caudill, Sabina Caudill, William Ramey and Polly Ann Craft, claiming to sue for themselves and all members of the Sandlick church. The only persons named as defendants were the appellees, James M. Hall, Robert Blair, Peter Adkins, S. G. Fairchild, David Sergeant and Joseph Fairchild.

It is, in substance, alleged in the petition, as amended, that the Sandlick church was organized in the year 1815 and that a church building was, in that year or shortly thereafter, erected upon the lot in question, which was donated to the church by one John A. Caudill, a member thereof; that the lot was never deeded to the church by Caudill, but some years after his death was conveyed it by a deed from the master commissioner of the Letcher circuit court under a decree of that court rendered in an action brought therein by the church against the heirs at law of Caudill to obtain the title to the property; that soon after receiving the deed the congregation pro-

ceeded to and did build on the lot a more commodious church building, which has since continuously been occupied and used by the congregation as a house for religious worship.

It is also alleged in the petition that in 1896 a division arose among the members of the Sandlick church, growing out of the departure of some of them from the articles of faith and doctrine peculiar to the "Old Regular Primitive Baptist Church," and which had been adopted by the Sandlick church at its organization in 1815; the advocates of the new faith being led by the appellees, Robert Blair, Joseph Fairchild, S. G. Fairchild and Peter Adkins; S. G. Fairchild being clerk of the Sandlick church and keeper of its records, and Robert Blair, Joseph Fairchild and Peter Adkins ministers in good standing of the "Old Regular Primitive Baptist Church."

It appears from the further averments of the petition that the appellees and other adherents of the alleged new faith, notwithstanding the taking of certain action by the members of the church opposing them, whereby they were, as claimed, expelled from the church, have since the beginning of the alleged scism in 1896 been, and are now, in possession of the lot, house of worship and records of the Sandlick church.

It would serve no good purpose to set forth in the opinion the differences in faith and doctrine alleged by the petition to exist between the contending factions of the Sandlick church, further than to say that the only substantial difference discoverable from the averments of the petition, is that the declaration of faith and doctrine they attribute to appellees and their associates, seems to be slightly more Calvinistic than that of appellants' declaration of faith and doctrine.

Waiving the question raised by appellees' special demurrer, whether on the showing made by the petition appellants were authorized to maintain an action like this on behalf of the membership of the Sandlick church, other than themselves, we find abundant reasons for holding, as did the circuit court, that the petition, even as amended, fails to state a cause of action.

First. It does not appear from its allegations whether appellants and those for whom they sue, composing one of the factions resulting from the alleged division in the church, constitute a majority of its membership. In Poynter, &c., v. Phelps, &c., 129 Ky. 381, we held that

the majority of a congregation of a religious denomination having a congregational form of church government like the Baptist church, without any judicatory with revisory powers, is ordinarily entitled to rule.

Second. Even if the alleged division occurred in 1896, as alleged, it does not appear from the allegations of the petition that appellants were then members of the Sandlick church or involved in the division; and if they were not, but became members thereof after the occurrence of the division, as it is admitted by the petition that appellees and those affiliated with them in belief have been in possession of the church property and in control of the affairs of the church continuously since the division arose, under the rule that the pleading must be most strongly construed againt the pleader, the inference is inevitable that they became members of the church since the division; and if so, it must be taken for granted that they could not have become members without action upon the part of appellees and those affiliated with them in the control of the affairs of the church, or without subscribing to the faith and doctrine to which the latter hold. In such state of case they are estopped to sue for the recovery of the church property upon the ground that the faith and doctrine adhered to by appellees is a departure from that to which the Sandlick church at the time of its organization became committed. 34 Cyc. 1182.

Third. The allegation of the petition that appellees were dismissed from the church, without setting forth the action taken, when, by whom taken, or that such action was authorized by the laws of the church, is insufficient to show that the dismissal was legally effected. If appellees had, in fact, been excommunicated by the Sandlick Baptist church we would be without power to pass upon such action of the church and could only consider it for the purpose of determining to what extent, if any, it could affect the disposition that should be made of the church property. As said in Poynter, &c., v. Phelps, &c., *supra*:

"The form of government of the Baptist church is congregational, and, therefore, purely democratic. Each church is a distinct organization independent of all others. There are no intermediate judicatories, or a judicatory of revisory powers in Baptist government. Consequently, the right of appeal does not exist. Every Baptist church is, therefore, a law unto itself in mat-

ters ecclesiastical. While what are known as Baptist Associations, both district and state, exist, they possess neither appellate jurisdiction nor revisory power, but may advise the churches wthout in any way binding the latter to accept such advice. . . . With respect to church buildings and other property of independent self-governing congregations—such as Baptist—which are controlled in the management by a majority of voices, if there be no specific trust involved, in case of controversy following a division and complete separation of one part of the congregation from the other, the civil courts will as a general rule give the property to the majority of the members, without inquiry as to whether there has been any change in the religious views of the congregation.''

It is patent from the situation here presented by the record that appellants have shown no right to the church property they seek to recover; and equally patent that the circuit court was without power to appoint trustees for the Sandlick Baptist church, as prayed by them in the petition, even though a division were shown to exist in the church. It is true that the question of whether the civil courts possess such power has never, so far as we are advised, been passed on in this jurisdiction, but it has been decided in other jurisdictions. In the case of Turpin v. Bagley, 138 Mo. 7, it was held that under the form of government and rules of the Baptist church, only the congregation of such church has the power to appoint trustees for a church. To the same effect was the decision in Garrell v. Sproles, 20 Texas Civil Appeals 387.

The same reasons that would prevent the recovery by appellants of the church lot and building in this case will prevent the recovery of the church records. The civil courts everywhere refuse to take cognizance of church action with respect to the enforcement of church discipline, or to pass upon questions that are purely ecclesiastical; the jurisdiction to determine such matters being in the church judicatories alone. It follows from what has been said, that the action of the circuit court in sustaining the general demurrer to the petition, as amended and dismissing the action, was not error.

Wherefore, the judgment is affirmed.